## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

JANE DOE 1,

     Plaintiff,

     v.

BUTLER UNIVERSITY;               Case No.
MICHAEL HOWELL, individually and as
an agent of Butler University; and        Hon.
RALPH REIFF, individually and as an
agent of Butler University;

     Defendants.

_____

## COMPLAINT AND JURY DEMAND

Plaintiff Jane Doe 1,[1] by and through her attorneys, The Fierberg National Law Group,

PLLC and Cohen & Malad, LLP, brings this action against Defendants Butler University

("Butler"), Michael Howell, and Ralph Reiff for negligence, gross negligence, battery, assault,

and intentional infliction of emotional distress, and states and alleges as follows:

## INTRODUCTION

1.     Butler athletic trainer, Defendant Michael Howell, groomed, illicitly

photographed, and sexually assaulted Jane Doe 1 and numerous other members of the Butler

---

[1] This case is one of three contemporaneously filed in this Court on behalf of female athletes injured at Butler and by these named Defendants under substantially similar circumstances. Pursuant to S.D. Ind. L.R. 10-1, Plaintiff is contemporaneously filing under seal a Notice of Intention to Seek Leave to Proceed under Pseudonym and a Joint Motion to Proceed Under Pseudonym ("Joint Motion"). The Joint Motion is brought on behalf of Plaintiff (referred to therein as "Jane Doe 1") and two other student-athletes ("Jane Doe 2" and "Jane Doe 3") who are now filing Complaints against Defendants. Plaintiffs are three of six women who formally reported Michael Howell's sex abuse to Butler University, and together they comprise just a few of the many victims of Howell's abuse.

women's soccer team. The assaults and sexual misconduct – which included Howell rubbing his erect penis against female players and dripping his sweat on the athletes as he groped their outer vaginal areas, breasts, and nipples – trace back many years and were perpetrated in Butler's training room, offices, buses, and in Howell's private hotel rooms as he traveled with the team for away games; locations and times when Howell was presumably under the supervision of Defendant Ralph Reiff, Butler's Senior Associate Athletic Director for Student-Athlete Health, Performance and Well-Being, and, more generally, the co-head coaches for the Butler women's soccer team, Tari St. John and Robert Alman.

2. Howell's misuse of his position of power and authority over Butler athletes and deviation from standard practices were numerous and obvious. Defendant Reiff did not do anything reasonably required to investigate the circumstances, train the coaches, keep Howell or the athletes under watch, promulgate or request the implementation of safety policies, or otherwise protect multiple women as they were repeatedly abused by Howell in various locations on and off campus over extended periods of time.

3. Defendant Reiff, Howell's direct supervisor, knew that athletic massages typically last no more than 10 minutes, focus solely on the target area, and should be used sparingly only when no other method is effective. However, Howell routinely gave Ms. Doe and other athletes multiple-hour full body massages, often taking them to locations (such as his private hotel room at away games as opposed to conference rooms available for training) outside the direct sightline of supervising staff. Nevertheless, Defendant Reiff and the coaches never inquired, investigated, raised questions about the safety of the female athletes, or implemented or followed safety protocols. Upon information and belief, Defendant Reiff failed to ensure that athletic staff, coaches St. John and Alman, and student-athletes were provided with protocols or attended

2

trainings that would identify the safety standards and practices for the treatment by trainers of female athletes.

4.     Howell first targeted Ms. Doe in early 2021 when she was a freshman. In just one instance, on September 18, 2021, Howell told Ms. Doe to report for treatment outside of his scheduled hours and kept her there for nearly three hours, despite her request to keep treatment short. Isolated in a windowless office within the athletic complex, with the lights off, Howell rubbed Ms. Doe's inner groin and moved aside her shorts, spandex, and underwear to touch the outer labia of her vagina multiple times. Howell also massaged Ms. Doe's breasts, touched her nipples multiple times, twisted her neck so hard it made it difficult for Ms. Doe to swallow, rubbed his erect penis against her hand, and massaged his dripping sweat into the skin on her back. Howell was so forceful in rubbing Ms. Doe's groin and outer vaginal area that afterward she had pain urinating and thought Howell caused her to have a urinary tract infection. Multiple versions of this and other gross misconduct were perpetrated upon Ms. Doe numerous times before and after this incident, causing her substantial emotional, physical, and other injuries and damages. Unfortunately, Howell perpetrated similar misconduct on other athletes.

5.     When Ms. Doe and five other young women reported Howell's misconduct, including the fact that he was surreptitiously photographing and videotaping athletes, Butler selected and retained independent legal counsel to investigate the allegations and make findings of fact under the demanding standards of Title IX of the Educational Amendments of 1972. However, Butler alerted Howell to the investigation before contacting law enforcement or seizing his work-issued phone, allowing Howell to destroy and/or transfer likely lurid photographs and videos taken of the athletes.

6.     Following an extensive investigation and fact-finding hearings, a panel of outside attorneys who served as decision makers ("Title IX Panel" or "Panel") confirmed the gravamen of the allegations, concluded that Butler did not have a formal policies and procedures manual for its athletic trainers, lacked necessary safety protocols, and emphasized Howell's stark deviations from standard practices.

7.     The Title IX investigation revealed that Butler's athletic training staff knew Howell was inappropriately handling and sharing body composition scan results and had indicators – *qua* notice – that Howell was infatuated with Ms. Doe. The Panel concluded that Ms. Doe was slowly and steadily isolated, stalked, and manipulated in an "unconscionably abusive environment." During this time, Defendant Reiff was aware that Howell created a "bubble" around the women's soccer players, and St. John was aware that this culture could have deterred players from coming forward and reporting Howell.

8.     The Panel concluded that Howell had sexually assaulted, sexually harassed, and stalked Ms. Doe, and that he had sexually assaulted and harassed other young women on the soccer team. The Panel also concluded that "[t]he harm to [Ms. Doe] was severe and the effects resulting therefrom are likely to be profound and lasting."

9.     This action is brought by Ms. Doe to recover her injuries and damages, compel Butler to institute safety protocols to protect her current teammates and future athletes, compel Butler to contact former student-athletes to assess whether they were also abused by Howell and need resources and assistance, prevent Howell from maintaining licensure that would give him the ability to abuse others, and to hold Defendants responsible for their acts and omissions that enabled a dangerous predator to gain unfettered access to and abuse her and many other young female athletes.

4

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Butler resides in this judicial district and/or a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## PARTIES

12.     Plaintiff Jane Doe 1 is a legal resident of a State that is not Indiana.[2]

13.     Defendant Butler is a private institution of higher education located and operating in Marion County, Indiana.

14.     Defendant Howell was an Assistant Athletic Trainer employed by and acting as an agent of Butler at all material times. Upon information and belief, Howell resides in Marion County, Indiana.

15.     Defendant Reiff was and remains the Senior Associate Athletic Director for Student-Athlete Health, Performance and Well-Being at Butler, employed by and acting as an agent of Butler at all material times.  Upon information and belief, Reiff resides in Marion County, Indiana.

---

[2] Because Butler's website includes detailed information regarding the women's soccer team, including each student-athlete's hometown and state, any person could easily identify Ms. Doe's true name if she included her state of residence in this publicly available Complaint. In order to protect Plaintiff's identity and privacy, her state of residence is disclosed under seal in her Notice of Intention to Seek Leave to Proceed under Pseudonym.

## FACTUAL ALLEGATIONS
### *Defendants Butler, Howell, and Reiff*

16.     Butler is an NCAA Division I school, and its athletic teams, including women's soccer, compete in the Big East Conference.

17.     At all material times, Alman and St. John were the co-head coaches of the Butler women's soccer team.

18.     Butler employed Defendant Howell as an Assistant Athletic Trainer from the spring of 2012 until October 6, 2021. Howell was furloughed in the summer of 2020 due to COVID-19 and returned to Butler in the fall of 2020.

19.     During his tenure at Butler, Howell worked with the women's soccer, men's baseball, women's and men's golf, men's tennis, and cheerleading teams.

20.     At all material times, Butler assigned Howell as the sole athletic trainer for the women's soccer and men's tennis teams.

21.     Howell was responsible for physically treating women's soccer players to prevent and remedy injuries.

22.     At all material times, Defendant Reiff was Howell's direct supervisor as Howell provided training services to athletes on different teams.

23.     Defendant Reiff's responsibilities included coordinating all healthcare activities for Butler's sports teams and student-athletes, overseeing Butler's sports medicine department and strength and conditioning program, ensuring the implementation of safety protocols and training, and looking after the well-being of staff as well as students under the care of trainers supervised by Reiff.

***Butler Recruited Ms. Doe***

24.     At her high school, Ms. Doe was a highly accomplished soccer player and successful academically. Butler recruited Ms. Doe to play women's soccer.

25.     Like her teammates, Ms. Doe did not have much, if any, experience with staff athletic trainers before attending college.

***The "Breeze" - Howell's Routine Exposure of Female Athletes' Intimate Body Parts***

26.     During a recruitment visit to Butler, where Ms. Doe was hosted by Butler soccer players, she heard them reference the "breeze," but did not ask what it meant, thinking that it was an inside joke of sorts regarding getting athletic treatment.

27.     Later, Ms. Doe learned that the "breeze" is what athletes on the Butler women's soccer team called it when Defendant Howell would lift their bras, spandex, and underwear and air would rush over their breasts and vaginal areas. This phrase was widely used amongst the players.

28.     Neither Defendant Reiff nor Defendant Butler, through other staff, provided Ms. Doe and other female athletes training or education concerning proper protocols and athletic treatment and massage by trainers and personnel that would have direct physical contact with Butler's athletes, despite the well-known vulnerability of athletes to sexual exploitation at the hands of team coaches, doctors, and other treatment providers who – as Defendant Reiff and Butler's coaches knew – stand in a unique position of power and authority over student-athletes.

29.     Due to this lack of training and education, and the fact that the "breeze" was a common experience among her peers, Ms. Doe believed it was normal practice the first time that Howell moved her underwear to expose her vaginal area.

*Howell Targeted Ms. Doe in the Spring of 2021*

30.     Howell maintained an environment that female soccer players found intimidating.

31.     Howell demeaned the soccer coaches and soccer strength coach and claimed that he "decide[d] who plays" women's soccer, as known by Coach Alman.

32.     Coaches St. John and Alman did, in fact, defer to Howell with respect to which soccer team members could play at any given time.

33.     Coach St. John knew that due to the culture of the women's soccer program, and Coach Alman's closeness with Howell, it could be difficult for players to express any concerns they might have about Howell.

34.     Howell was known to withhold treatment from athletes with whom he became upset or as a disciplinary consequence for student-athletes who were late to or missed appointments with him.

35.     Howell bragged about training female soccer players who went on to become professional athletes.

36.     Beginning in the spring of 2021 and continuing until he was reported in October 2021, Howell leveraged his authority and power as an athletic trainer to isolate, groom, manipulate, control, sexually assault, and otherwise abuse Ms. Doe.

37.     From January through April 2021, Howell's communications with Ms. Doe went from being curt and brief to lengthy, familiar, and warm.

38.     Although Howell had instructed players he would not communicate with them after 8:00 p.m., he began initiating messaging with Ms. Doe after that time.

39.     In the spring of 2021, Howell treated Ms. Doe's back. He had her remove her shirt, which was unnecessary given the treatment area. Ms. Doe had not anticipated this and was

wearing a regular bra instead of a sports bra. Despite the thinness of her bra strap and the treatment location being elsewhere, Howell moved her bra strap. He also went lower on her body than was needed – making Ms. Doe very uncomfortable.

40.     Beginning on March 24, 2021, Howell treated Ms. Doe daily, regardless of whether she reported any injury.

### Howell Treated Ms. Doe and Other Members of the Butler Women's Soccer Team in His Private Hotel Room

41.     In mid-April 2021, the Butler women's soccer team competed in the Big East tournament semifinal in Providence, Rhode Island.

42.     On that trip and others, Howell did not treat athletes in the conference room that Butler had reserved.

43.     Instead, Howell treated female soccer players in his private hotel room, which the coaches knew.

44.     On that Big East tournament trip, Ms. Doe experienced neck pain and a headache, and Howell treated her, alone, in his hotel room. The hotel room door was either fully closed or propped open only an inch or two with the door lock.

45.      Howell again moved down Ms. Doe's bra strap, and he continued to pull it lower and lower as his breathing increased, giving Ms. Doe the strong impression he was aroused.

46.     While Howell had placed a towel over her exposed chest, the towel had shifted, and he would not move it back to properly cover Ms. Doe.

47.     During the tournament, Howell treated another female student-athlete alone in his hotel room.

9

48.     During that two-hour massage, Howell closed the door, played white noise, moved the student's underwear, touched her outer vaginal area, and rubbed his erect penis against her hand, as his breathing shallowed, indicating his arousal.

49.     During the same tournament, Howell required women's soccer players to take ice baths in his hotel bathroom. He gave them the impression that this was non-negotiable.

### Howell Created a Special Training Program for Ms. Doe and Isolated Her from Teammates and Coaches

50.     By April 2021, Howell began discussing with Ms. Doe the possibility of "working together" on a post-season workout regimen.

51.     Howell told Ms. Doe that he had created workout programs for Butler athletes who became professional athletes, and he would do the same for her.

52.     Howell created personal workouts for Ms. Doe, which she did with him approximately five times before she went home for the summer.

53.     Over the summer of 2021, Howell continued providing Ms. Doe with special workouts.

54.     Howell instructed Ms. Doe not to tell the coaches about the workouts, who he denigrated.

55.     As an athletic trainer, it was not Howell's job to provide workouts or training programs for athletes, and it was inappropriate for him to do so.

56.     During the summer, Howell maintained face-to-face and text communications with Ms. Doe, which became even more frequent, familiar, and complimentary.

57.     Howell tried to bond himself to Ms. Doe by giving and referring to her by pet names, including "My Little Project," "My Little Machine," "F***ing Beast," "VIP," "A F***ing Force," and "Amazing [Ms. Doe]".

58.     Howell set Ms. Doe apart from her teammates and tried to poison her relationships with them, telling her to be "careful" of her close friend and teammate because he "knew things" about the woman, crediting Ms. Doe as solely responsible for team victories, and painting her teammates as inferior to her.

### Howell Continued Grooming and Repeatedly Sexually Abused Ms. Doe in the Fall of 2021

59.     In the fall of 2021, Defendant Howell spent approximately 17 hours per week with Ms. Doe, outside of practices and games, far more than any other athlete, and he continually offered to spend even more time with her, no matter how early or late in the day.

60.     Howell described Ms. Doe to others as his "project."

61.     Howell was fixated on Ms. Doe's body composition scan results and shared them with other athletes, which was prohibited. A fellow teammate submitted an anonymous complaint about this. The coaches were informed of the complaint and advised that Butler's athletic training staff would address it.

62.     Howell continued isolating Ms. Doe from her teammates by excessively praising her and denigrating them.

63.     Howell controlled Ms. Doe's emotions through the granting and withholding of his adulation and praise.

64.     Howell required that Ms. Doe come in for treatments daily, even when she did not need them.

65.     Howell devised reasons to hold lengthy, sometimes hours-long conversations with Ms. Doe before and after treatments.

66.     After treatments, Howell would sometimes accompany Ms. Doe to the women's soccer team locker room, where he would sit and talk with her.

67.     Coaches, staff, and athletic trainers like Howell were generally not permitted in locker rooms unless it was to retrieve a piece of equipment or restock nutritional resources and snacks.

68.     Howell repeatedly told Ms. Doe how they purportedly were alike in terms of their thoughts, intellect, drive, and taste.

69.     Howell told Ms. Doe, "I know everything about you," and indicated that he even knew her social security number.

70.     Howell told Ms. Doe that he had files of the soccer players with photos of them underage drinking.

71.     Howell told Ms. Doe and others, "If I go down, I'm taking you with me."

72.     Howell bought special food for Ms. Doe and put it in her locker.

73.     Howell sent Ms. Doe memes and quips from movies.

74.     Howell put such pressure on her to perform that Ms. Doe started overtraining, which Coaches St. John and Alman noticed.

75.     Howell told Ms. Doe that he was a certified masseuse.

76.     At the beginning of the fall 2021 soccer season, Howell began to give Ms. Doe full body massages despite Ms. Doe never requesting this treatment.

77.     Howell made it a routine to give Ms. Doe full body massages before games, which were twice a week.

78.     In August 2021, Howell's massages of Ms. Doe ranged from 45 minutes to an hour.

79.     During each massage, Howell would go under the base of Ms. Doe's sports bra, pull at her spandex, and go past the waistband line of her underwear.

80.     As the fall season progressed, Howell's massages of Ms. Doe became even longer and more invasive.

81.     Howell did not wear gloves during any of the massages or treatments he gave Ms. Doe.

82.     Howell's lengthy treatments caused Ms. Doe's shoulders to be sore because she would have her arms above her head for multiple hours.

83.     Because Ms. Doe was face down during Howell's lengthy treatments, she sometimes could not see out of one eye for an hour after a massage.

84.     Ms. Doe began to develop muscle twitches because she was so tense during Howell's massages.

85.     Ms. Doe came to fear Howell, experienced great apprehension regarding his treatments and massages, tried to prevent him from touching intimate areas of her body, and eventually began trying to avoid him altogether.

86.     Ms. Doe tried wearing different combinations of clothing – underwear, Spandex, and shorts – in an effort to prevent Howell from moving her underwear, to no avail.

87.     Howell lifted and pulled her underwear to such an extent that he caused them to become stretched out.

88.     Howell told Ms. Doe that one of his goals in massaging her was to get her to fall asleep, so Ms. Doe would try to act like she was asleep early in the massage so that Howell would stop.

89.     Ms. Doe tried to rationalize Howell's misconduct during treatments on the basis that, among other things, Butler had employed him for ten years and the soccer coaches thought highly of him.

13

90.     Ms. Doe believed that Howell was obsessed with her.

91.     On or near September 8, 2021, Howell touched Ms. Doe's outer vaginal area while giving her a full body massage.

92.     Directly afterward, Ms. Doe texted one of her teammates, telling her that Howell had touched her "flap," meaning her labia.

93.     On September 17, 2021, Howell rubbed Ms. Doe's breasts and touched her nipple at least five times during treatment.

### *Howell Battered and Assaulted Ms. Doe Throughout a Grueling Three-Hour Long Treatment on September 18, 2021*

94.     On Saturday, September 18, 2021, Howell told Ms. Doe to report for treatment after normal scheduling hours.

95.     Ms. Doe was not injured, and she told Howell that she did not want treatment that day because she had schoolwork to do.

96.     Howell responded to Ms. Doe stating, "So you don't want to play good tomorrow."

97.     Ms. Doe acquiesced and requested that the treatment be shorter than previous treatments because she needed to study.

98.     Disregarding this request, Howell "treated" Ms. Doe for approximately three hours.

99.     A teammate wanted to accompany Ms. Doe out of concern for Ms. Doe's safety but left because she was afraid Howell would confront her.

100.     Soon after the massage began, Ms. Doe had to urinate.

101.     Ms. Doe waited to tell Howell that she needed to use the restroom because she was afraid if not enough time had passed, Howell would insist on continuing the massage.

14

102.    Howell pulled one of Ms. Doe's legs to the side, worked his hands towards her groin, moved her spandex and underwear to the side, and repeatedly brushed against Ms. Doe's pubic hair.

103.    Ms. Doe had to urinate badly, and she was afraid it would get on Defendant Howell's hands as there was no clothing in the way to stop or absorb it.

104.    After about an hour and a half, Ms. Doe excused herself to use the restroom.

105.    When she came back, Howell instructed her to go to the private physician's office, which had no windows, to finish the massage.

106.    Ms. Doe was displeased that the massage was continuing and confused as to why they were moving to the physician's office.

107.    Howell claimed he wanted just 15 more minutes with her to work on her quads.

108.    Howell turned off the lights and closed the door to the physician's office.

109.    Ms. Doe felt "freaked out."

110.    Howell placed his thumbs near Ms. Doe's collarbone and swiped downwards with the rest of his fingers, touching her breasts and nipples.

111.    Howell became aroused and began to sweat, and as his sweat dripped on Ms. Doe's back, he rubbed it into her skin.

112.    Howell rubbed his erect penis and genital area against Ms. Doe's hand multiple times, the longest continuous touching lasting 5-10 seconds.

113.    Howell put both of his hands around her neck, twisting them and scaring Ms. Doe.

114.    Ms. Doe had difficulty swallowing because of the pressure from Howell's hands around her throat.

115.    Howell moved to Ms. Doe's legs, again separating one leg from the other, and worked his hands towards her groin.

116.    Howell lifted Ms. Doe's spandex and underwear and touched the outer labia of Ms. Doe's vagina with his fingers multiple times, causing Ms. Doe to fear that he was going to digitally penetrate her vagina.

117.    Howell's massage caused Ms. Doe to later suffer pain when urinating, and she thought he may have caused her to have a urinary tract infection.

### *Ms. Doe Confronted Howell*

118.    On September 22, 2021, while staying at a hotel for an away game, Howell instructed Ms. Doe to come to his private hotel room for treatment at 8:45 p.m.

119.    By this time, Howell's lengthy full body massages of Ms. Doe and his touching of her genitalia had become unbearable, and Ms. Doe decided she was going to tell Howell that he needed to change his behavior.

120.    Ms. Doe asked if the massage could be shorter than usual so that she could get to bed early.

121.    Ms. Doe nervously confronted Howell and told him that his previous high groin massage did not feel good.

122.    Howell said he would avoid that area, but during the full body, hour-long massage on his bed that ensued, he again massaged Ms. Doe's groin.

123.    Afterwards, as she was leaving, Howell shouted after Ms. Doe, "Sorry my massages suck!"

16

124.     Howell intended to and did manipulate Ms. Doe into feeling guilty for confronting him about the previous massage, and she texted Howell an apology when she got back to her hotel room.

### *Ms. Doe Tried to Avoid Howell's Treatments*

125.     The next night, on the bus ride home after the game on September 23, 2021, Coaches St. John and Alman, along with Defendant Howell, sat in the staff area at the front of the bus, and Ms. Doe and other athletes sat at the rear of the bus.

126.     Howell sent Ms. Doe a long text message profusely complimenting her, and he watched her from the front of the bus to see if she was reading it.

127.     A few hours later, around 1 a.m., Howell left the staff area, sat down next to Ms. Doe in the back of the bus, said he would give her a massage to help her sleep, told her to lie down on a bench he had set up as a type of bed by her seat, and began rubbing her neck and head.

128.     Ms. Doe did not ask for help sleeping, did not want the massage, was concerned about how it would look to others on the bus, and tried to get him to stop.

129.     Ms. Doe eventually moved as far away as she could from Howell, toward the bus window, so that he could not touch her.

130.     When Howell was no longer able to reach Ms. Doe's neck, he became discouraged and went back to his seat.

131.     Coach St. John knew that Howell went to the back of the bus and believed it was odd for him to be back there for so long and so late, but without any training or protocols on the role, boundaries, and red flags regarding training staff, she took no action to inquire about the

circumstances, or advise Howell's supervisor, Defendant Reiff, of any concerns she had about Howell.

132.    Following the September 18, 2021, treatment, Ms. Doe planned ways to avoid Howell's next scheduled treatments.

133.    Ms. Doe decided to wait and study for quizzes later in the day, in order to escape Howell's treatment.

134.    Ms. Doe had her grandparents arrive on a Saturday rather than Sunday for a soccer game, so she could get out of another of Howell's scheduled treatments.

135.    On September 26, 2021, Howell treated Ms. Doe for approximately ninety minutes in the athletic training room. During this treatment, Howell massaged her groin, lifted her spandex, and went beyond Ms. Doe's bikini line to touch her pubic hair.

136.    Another athlete noticed Howell's actions and video recorded the treatment.

137.    Another video of Howell inappropriately treating an athlete was circulated amongst the athletes showing Howell's inappropriate behavior and was eventually seen by Butler's athletic staff.

### *Howell Secretly Photographed and Recorded Ms. Doe and Other Female Athletes*

138.    Howell secretly photographed and video recorded Ms. Doe and other female athletes.

139.    In August 2021, a teammate caught Howell taking pictures of Ms. Doe from behind while she was lifting weights.

140.    Howell sent Ms. Doe a photo of herself, taken from behind.

141.    About a week later, Howell was showing Ms. Doe a video of a shooting drill on his phone, and Ms. Doe saw that his photo gallery screen was filled with pictures of her.

18

***Defendant Reiff and the Coaches Knew Howell Fixated on Ms. Doe and Cloaked His
Treatment of Women Soccer Players in Secrecy, yet Neither Defendant Reiff nor Butler
Adequately Supervised Howell or Ensured the Safety of Ms. Doe and Her Teammates***

142.     Defendant Reiff was aware that Howell created a "bubble" around the women's
soccer players, including Ms. Doe, and refused to accept or allow anyone to assist him with the
team.

143.     Defendant Reiff also knew that Howell focused on the women's soccer program
at the expense of the men's tennis team.

144.     Coaches St. John and Alman, who accompanied the women's soccer team to
every away game and tournament, knew that Howell provided treatment to female athletes in his
private hotel room, instead of performing treatment in a conference room. Upon information and
belief, Coaches St. John and Alman were not given protocols or otherwise trained by Defendant
Reiff or Butler on safety standards for athletic trainers and athletes.

145.     It was widely known amongst Butler athletic staff that a third person should be
present if an athletic trainer was providing treatment to student-athletes in a private hotel room.

146.     Coaches St. John and Alman never questioned or confronted Howell about
treating women soccer players in his private hotel room instead of the conference room, and they
never entered Howell's room to observe his treatments or determine whether Ms. Doe or any
other player was safe.  Upon information and belief, it is likely that the coaches' failure to act
reasonably is a consequence of the lack of adequate training and protocols provided by
Defendants Reiff and Butler.

147.     Coaches St. John and Alman knew that, in 2021, Howell stopped providing
written reports detailing women soccer players' injuries and his treatment of the players, despite

it being Howell's responsibility to do so. Defendant Reiff knew or should have known that Howell had stopped submitting written reports.

148. Howell did not record any entries for, among other things, his many soft tissue massages and treatments of Ms. Doe.

149. Coaches St. John and Alman knew that in early September 2021, one of Ms. Doe's teammates submitted an anonymous complaint about Howell sharing body composition data.

150. Coaches St. John and Alman knew that Howell withheld treatment from players with whom he was displeased.

151. Defendant Reiff did not reasonably supervise Howell's treatment of Ms. Doe or other athletes in the treatment room or at other locations, which was critical because Coaches St. John and Alman and other Butler personnel rarely entered the treatment room.

152. Defendant Reiff did not take measures to ensure that Howell complied with athletic training practices designed to ensure student safety, which would have included treating student-athletes in common areas instead of a private hotel room with a bed; not entering locker rooms; communicating with and appropriately "draping" or covering an athlete during treatment; asking for an athlete's permission to move her garment during treatment; having a trainer of the same sex assist if treatment in a private room is necessary; and properly recording treatments.

### *Ms. Doe and Other Women Soccer Players Reported Howell*

153. On September 28, 2021, four women soccer players – facing the prospect of private "treatment" in Howell's hotel room during an upcoming away game, and out of concern for themselves and younger teammates, particularly Ms. Doe – reported Howell's sexual misconduct to Coach St. John.

154.    The Butler athletes did not report Howell earlier because of the high regard in which he was held by Butler, how Butler's coaches spoke of him, and because of his intimidating and threatening manner towards players.

155.    Moreover, many of the student-athletes, like Ms. Doe, did not recognize that Howell's acts were sexually abusive due to, among other things, their lack of training and education on proper athletic trainer conduct, inexperience with athletic trainers, and youth; the trust and authority that the Butler athletic staff placed on Howell; and the general difficulty many laypeople have in identifying when medical or athletic treatment has crossed a line and constitutes sexual abuse or misconduct.

156.    During Howell's treatments and massages, Ms. Doe tried to rationalize that what was happening could not be a problem or wrong because, among other things, Howell had been working at Butler for ten years and had a family.

157.    On September 29, 2021, Defendant Reiff told Howell that a concern had been raised and that Howell would not be traveling with them to an away game the next day.

158.    When Ms. Doe found out that her teammates had reported Howell, she could not stop crying because she was so relieved.

159.    On October 2, 2021, Ms. Doe reported Howell's sexual misconduct to Coach St. John, which St. John shared with Title IX Coordinator, Maria Kanger.

160.    Butler's Title IX Coordinator was specifically advised and made aware of the fact that Howell had been surreptitiously photographing and recording young female student-athletes on his Butler-issued phone.

161.    Butler alerted Howell to the complaints and investigation before contacting law enforcement, reviewing Howell's university-issued phone, or demanding possession of the phone

so that photographs and videos of the athletes could be reviewed and prevented from being transferred or destroyed.

162.   Butler did not instruct Howell to preserve the contents of the phone for the Title IX investigation.

163.   Although multiple female athletes had reported Howell's serious sexual misconduct to Butler, Defendant Reiff instructed Howell to report to work on campus on October 1, 2021.

164.   Upon information and belief, by October 1, 2021, Howell had been instructed not to interact with the women's soccer players.

165.   On October 1, 2021, Howell waited for Ms. Doe outside of the training room and confronted her, causing her to be scared and nervous.

166.   Ms. Doe returned to the training room and waited there for Howell to leave before going to the locker room, as she knew Howell could enter the locker room.

167.   On October 2, 2021, Ms. Doe was in the training room before practice, and Howell showed up, making Ms. Doe so afraid that she started crying. As she and a teammate left the room, Howell followed them, and the two athletes ran in order to escape him.

168.   On October 6, 2021, Howell was placed on administrative leave, and Butler's Title IX Coordinator filed a "formal" Title IX complaint against Howell.

169.   Between September 28, 2021, when Howell was first reported, and October 6, 2021, when he was placed on administrative leave, he made multiple attempts to interact with players in a manner that frightened them.

***Independent Counsel Investigated and Determined that Howell Had***
***Sexually Harassed, Sexually Assaulted, and Stalked Ms. Doe***

170.    Butler retained attorneys from the law firm of Church Church Hittle and Antrim

to investigate the Title IX complaint against Howell.

171.    The investigation lasted approximately five months.

172.    Butler retained additional outside independent counsel to comprise the decision-

making Title IX Panel that considered the information gathered through the investigation and

presided over a five-day hearing on the complaints against Howell.

173.    During the investigation and/or hearings, Defendant Reiff and other Butler

employees admitted that:

   a.    Butler had no written policies or procedures regarding proper athletic
         trainer conduct, setting boundaries with athletes, or working with athletes
         of the opposite sex;

   b.    An athletic trainer's active treatment for a student-athlete typically lasts
         15-30 minutes, an athletic massage typically lasts only 10 minutes, and
         there is no appropriate reason for an athletic treatment or massage to last
         two to three hours;

   c.    There is no legitimate treatment reason for an athletic trainer to give full-
         body massages, perform soft tissue work on breast tissue, or go under a
         female athlete's underwear;

   d.    An athletic trainer's treatment of players during away games should take
         place in a conference room or common space, and if that is not possible, a
         third person, preferably of the same sex as the student, should be present
         for treatment;

   e.    Communication from an athletic trainer is imperative during treatment;

   f.    Athletic trainers must appropriately drape a student-athlete during
         treatment in order to shield the student-athlete's private body parts;

   g.    It is inappropriate for a trainer to use massage to help an athlete sleep;

   h.    Athletic trainers should not provide individual workouts for players; and

i.    It is improper for an athletic trainer to deny treatment to a student-athlete as a disciplinary consequence.

174.    The Title IX Panel determined, based on a preponderance of evidence, that Howell had sexually harassed, sexually assaulted, and stalked Ms. Doe, in violation of Butler's sexual misconduct policies.

175.    Butler's sexual harassment policy provided, in pertinent part:

Sexual Harassment is unwelcome conduct on the basis of sex that satisfies the conditions outlined in (1), (2), and/or (3), below. "Unwelcome conduct" may include any unwelcome sexual advance, request for sexual favors, or other unwelcome conduct of a sexual nature, whether verbal, nonverbal, graphic, physical, electronic or otherwise.

3. Hostile Environment: Unwelcome conduct that is sufficiently severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefitting from the University's education or employment programs and/or activities.

176.    Butler's sexual assault policy provided, in pertinent part:

Sexual Assault is engaging in any of the following knowing or intentional acts without consent:

1. Touching of the buttocks, breasts, groin or genitals of another, whether clothed or unclothed for the purpose of sexual gratification.

2. Touching another with any of these body parts for the purpose of sexual gratification,

3. Making another person touch you or themselves with or on any of these body parts for the purpose of sexual gratification.

177.    Butler's stalking policy provided:

Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear for the person's safety or the safety of others or to experience substantial emotional distress.

1. "Course of conduct" means two or more acts, including but not limited to acts in which a person directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils,

24

threatens, or communicates to or about another person, or interferes with another person's property.

2. Substantial emotional distress means significant mental suffering or anguish.

178.   The Panel found that Howell exploited his authority and power over Ms. Doe to isolate, manipulate, control, and sexually assault her, which he did on multiple occasions, without her consent, and for his own sexual gratification.

179.   The Title IX Panel determined Ms. Doe did not consent, and could not consent, to Howell's touching of her genitals and breasts, or rubbing his erect penis against her, because of the "coercive nature of the power dynamic between" Howell and Ms. Doe. The Panel succinctly stated, "[c]onsent is simply not in question here."

180.   The Panel also found that "[Howell's] isolation of [Ms. Doe] was egregious, both in a general, social sense and in a literal, spatial sense. This methodical, steady isolation left [Ms. Doe] vulnerable to [Howell's] behavior and unlikely to come forward with her concerns."

181.   The Title IX Panel concluded:

Beginning in the late spring of 2021 and continuing until he was placed on administrative leave from Butler University, [Howell] developed an inappropriately close relationship with [Ms. Doe], a female athlete under his authority. By fostering an emotional intimacy with [Ms. Doe] and causing her to feel reliant upon him for her physical mental, and emotional well-being, [Howell] created an **unconscionably abusive environment** for [Ms. Doe].[Howell] played upon [Ms. Doe's] obvious vulnerability, her desire to please, and her intense fear of disappointing expectations. He controlled her emotions through the granting and withholding of his affirmation, eventually leading her to feel physically and mentally unwell.

182.   The Panel noted that in the summer and fall of 2021, Ms. Doe had, among other things, experienced a steep decline in her mental health, lost her appetite, experienced internal hatred and difficulties sleeping, was doubting her abilities as a soccer player and student, and mentally "was a mess."

183.     The Panel determined that Howell had also sexually assaulted and harassed other members of the Butler women's soccer team who complained about him in the fall of 2021, "evidencing a widespread pattern of inappropriate conduct."

184.     The Panel determined, "[g]iven the sensitive nature of the position of athletic trainer, the exposure it presents to the student athletes and to Butler University, and the reckless and inappropriate behaviors of [Howell], there is simply no safe manner in which to allow him to proceed with his position at the University."

185.     The Panel found that "[Howell] shows no remorse, and in fact appears angry and indignant at having any of his actions called into question."

186.     The Panel recommended that Butler terminate Howell's employment with no opportunity for rehire and permanently revoke his rights to be on campus or attend any university-sponsored events.

187.     Since 2012, when Howell started as an athletic trainer at Butler, Howell has had access to hundreds, if not thousands, of young female athletes.

188.     Upon information and belief, following the investigation and the Panel Findings, Butler has not reached out to a single former athlete to understand the depth of Howell's misconduct, offer help to those who may be survivors of his abuse, or otherwise take responsibility for the harm caused to athletes by someone under its employ.

### Defendants Butler and Reiff Ignored the NCAA's Warning Regarding the Foreseeability of Athletic Staff-on-Student Sexual Abuse and the Need for Policies and Training to Prevent the Same

189.     Over a decade ago, the NCAA published *Staying In Bounds – an NCAA Model Policy to Prevent Inappropriate Relationships between Student-Athletes and Athletics Department Personnel* ("NCAA *Staying In Bounds* Publication"), a resource "designed to ensure

that student-athletes are safe from sexual advances by coaches or other athletic department employees."

190.    The 2012 publication described sexual abuse in the collegiate athletic context as "a slow seduction (or 'grooming') whereby one person gradually prepares another to accept 'special' attention, and then proceed with sexual activity."

191.    The NCAA explained, because of the power differential between athletic staff and student-athletes, any sexual activity between the two inherently constitutes sexual abuse.

192.    The NCAA emphasized the need for "colleges and universities[to] take reasonable steps to prevent unprofessional and potentially harmful relationships between student-athletes and athletics department staff – especially because . . . **the development of such relationships, and their potentially harmful consequences for athletes, are entirely foreseeable**."

193.    The "reasonable steps" identified by the NCAA included implementing and educating all athletic staff and student-athletes on policies intended to prevent staff-on-athlete sexual abuse.

194.    The Title IX Panel's findings – that Butler had no written policies or procedures regarding proper athletic trainer conduct, setting boundaries with athletes, or working with athletes of the opposite sex – establishes that Defendants Butler and Reiff ignored the NCAA's notice and warnings, to the great detriment of Ms. Doe and other female student-athletes.

*Independent Counsel Investigated and Determined that Ms. Doe Suffers Severe Injuries*

195.    Butler's own Title IX Panel determined, "[t]he harm to [Ms. Doe] was severe and the effects resulting therefrom are likely to be profound and lasting."

196.     As a direct and proximate result of Defendants' egregious actions and inactions,

Ms. Doe has significantly suffered, and for the foreseeable future will continue to suffer severe

physical, emotional, and other injuries and damages.

### COUNT I
### Negligence
### (Defendants Butler and Reiff)

197.     Plaintiff Jane Doe 1 incorporates all preceding paragraphs into this Count by

reference as though fully restated herein.

198.     Defendants Butler and Reiff owed duties to Ms. Doe to conform their conduct to

an appropriate standard of care to prevent, investigate, train other staff to recognize and report,

and remediate athletic trainer sexual abuse, sexual harassment, sexual assault, stalking,

grooming, and other misconduct against Ms. Doe and other student-athletes.

199.     Defendants voluntarily assumed these duties when they undertook to employ,

supervise, utilize and/or direct female athletes to Howell as an athletic trainer to provide

treatment to such athletes, including Ms. Doe, and held him out as a trusted and valuable

employee.

200.     Defendants' undertaking and assumption of these duties created a special

relationship between them, other Butler staff, and Ms. Doe, and corresponding duties to act in the

manner of a reasonably prudent person.

201.     Ms. Doe relied on Defendants' exercise of reasonable care in this undertaking, to

protect her from sexual abuse, sexual harassment, sexual assault, stalking, grooming, and other

misconduct at the hands of Butler's athletic trainer.

202.     Ms. Doe relied on Defendants' exercise of reasonable care so that she could

participate in women's soccer, for which she had been recruited, without being subjected to

sexual abuse, sexual harassment, sexual assault, stalking, grooming, and other misconduct by Butler's training staff.

203.    The three-part balancing test utilized by the Indiana Supreme Court in *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. 2011), also establishes that Defendants owed these duties to Ms. Doe.

204.    Defendants held out and represented Howell as a trusted and valued athletic trainer who student-athletes like Ms. Doe – a vulnerable young woman who, as was true of most of her teammates, had little to no experience with athletic trainers – should trust, rely on, and go to for athletic treatment. Defendant Reiff undertook and was otherwise charged with the supervision of Howell necessary to ensure that such trust and reliance was well-placed and that the athletes were safe.

205.    As the sole athletic trainer for Butler women's soccer team, under Defendant Reiff's direct supervision, Howell was the Butler employee responsible for providing treatment to female athletes, and his responsibilities included treating young women and having access to intimate and private areas of their bodies in vulnerable situations and circumstances.

206.    The risk of Howell sexually abusing, sexually harassing, sexually assaulting, stalking, grooming, and perpetrating other misconduct against female students was reasonably foreseeable given that Howell – as Defendants admittedly knew – possessed great and unique authority and power over the student-athletes entrusted to his care, and he carried out his responsibilities largely without supervision and often in privacy, including his own hotel room.

207.    The risk of Howell sexually abusing, sexually harassing, sexually assaulting, stalking, grooming, and perpetrating other misconduct against female student-athletes was reasonably foreseeable given the 2012 NCAA *Staying In Bounds* Publication and the high-profile

nature of treatment providers' prolific sexual abuse and assault of students and athletes, including but not limited to that of Larry Nassar, Robert Anderson, Richard Strauss, and James Heaps.

208.    Public policy considerations also weigh heavily in favor of imposing these duties on Defendants.

209.    Indiana has codified this social norm and attendant duties and prohibits an athletic trainer from engaging in lewd or immoral conduct or sexual contact with a person the trainer is treating. Ind. Code § 25-1-9-4 (2017).

210.    Student-athletes reasonably expect that universities and their employees will protect them and keep them safe from athletic trainer sexual abuse, sexual harassment, sexual assault, stalking, grooming, and other misconduct.

211.    Reasonable persons would recognize and agree that such duties exist.

212.    Defendants breached their duties and failed to conform their conduct to the requisite standard of care due to Ms. Doe by, among other things:

> a.    Permitting Howell to provide treatment to female athletes, including Ms. Doe, in his private hotel room, without staff or a third person present;
>
> b.    Failing to supervise Howell during his treatment of Ms. Doe and other female athletes, including in his private hotel room, the windowless physician's office, and the training room;
>
> c.    Failing to train or educate student-athletes, coaches, and staff regarding employee-on-student-athlete sexual assault, sexual harassment, sexual abuse, grooming, stalking, inappropriate touch, boundaries, proper athletic treatment and massage, Title IX, athletic training standard practices and procedures, or reporting complaints or concerns regarding the same;
>
> d.    Failing to have policies and protocols in place designed to protect student-athletes like Ms. Doe from athletic staff sexual assault, sexual harassment, sexual abuse, grooming, stalking, inappropriate touch, violation of boundaries, and improper athletic treatment and massage;
>
> e.    Failing to investigate when Howell ceased providing written reports of his treatment of student-athletes including Ms. Doe, repeatedly provided

treatment to Ms. Doe and other members of the women's soccer team in his private hotel room, and/or spent an inordinate time at the back of the bus attempting to massage Ms. Doe;

f.      Failing to monitor athletes, their injuries, the content or absence of required reports, the specific care they were receiving, and the progression of their treatments;

g.      Failing to prevent Howell from accessing or approaching Ms. Doe and other female students, after they had reported him to Butler coaches and officials for sexual misconduct; and

h.      Failing to prevent Howell from destroying and deleting photographs, videos, and other evidence from his university-issued cell phone.

213.    Defendant Butler is vicariously liable for its employees' negligence under the doctrine of respondeat superior.

214.    At all relevant times, Defendant Reiff's negligent acts and omissions, as well as those of the coaches, arose within the scope of their employment as athletic staff hired by Defendant Butler and as agents of Butler and were in furtherance of Butler's business and interests in the success of the women's soccer team; operating, managing and supervising the team; and training and caring for Ms. Doe and other student-athletes so that the team would compete for and on behalf of Butler and its athletic program.

215.    As a direct and proximate result of Defendants' negligent actions and inaction, Ms. Doe was sexually assaulted, sexually harassed, stalked, groomed, photographed, video recorded, and abused for months, and suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

## COUNT II
### Gross Negligence
### (Defendants Butler and Reiff)

216.    Plaintiff Jane Doe 1 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

217.    Defendants Butler and Reiff's acts and omissions, as well as those of the coaches, in breach of their duties to Ms. Doe set forth above were in reckless disregard of the high risk of harm and consequences to Ms. Doe.

218.    As the sole athletic trainer for Butler women's soccer team, Howell possessed unique authority and power over female athletes and access to their bodies in vulnerable circumstances and environments. Defendant Reiff was Howell's direct supervisor.

219.    It was obvious that Howell – left unsupervised and unmonitored, and with no protocols, education or training provided to student-athletes or athletic staff regarding employee-on-student-athlete sexual assault or trainer boundaries, protocols and practices – posed an unjustifiably high risk of harming the female student-athletes entrusted to his care.

220.    This risk was known to Defendants and/or so obvious that it should have been known to Defendants, particularly in light of the 2012 NCAA *Staying In Bounds* Publication and treatment providers' widely publicized sexual abuse and assault of students and athletes, including but not limited to that of Larry Nassar, Robert Anderson, Richard Strauss, and James Heaps.

221.    Defendant Butler is vicariously liable for its employees' gross negligence under the doctrine of respondeat superior.

222.    At all relevant times, Defendant Reiff's grossly negligent acts and omissions, as well as those of the coaches, arose and were within the scope of their employment as athletic

32

staff hired by Defendant Butler and as agents of Butler and were in furtherance of Butler's business and interests in the success of the women's soccer team; operating, managing and supervising the team; and training and caring for Ms. Doe and other student-athletes so that the team would compete for and on behalf of Butler and its athletic program.

223.    As a direct and proximate result of Defendants' grossly negligent actions and inaction, Ms. Doe was sexually assaulted, stalked, sexually harassed, groomed, photographed, video recorded, and abused for months, and suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

## COUNT III
**Battery**
**(Defendants Butler and Howell)**

224.    Plaintiff Jane Doe 1 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

225.    Defendant Howell intended to cause harmful and/or offensive contact with Ms. Doe, and an imminent apprehension of such contact, when he repeatedly and illicitly touched her breasts, touched her outer vaginal area, touched other areas of her body, rubbed his erect penis on her, and placed his hands around her throat, and he directly harmed Ms. Doe as a result.

226.    Defendant Howell acted recklessly and/or with reckless disregard of the consequences when he repeatedly and illicitly touched Ms. Doe's breasts, touched her outer vaginal area, touched other areas of her body, rubbed his erect penis on her, and placed his hands around her throat.

227.    Defendant Howell's sexual motivation and misconduct are considered aggravating conduct for the tort of battery against Ms. Doe.

228.     Ms. Doe did not consent to Defendant Howell illicitly touching her breasts, touching her outer vaginal area, touching other areas of her body, rubbing his erect penis on her, and placed his hands around her throat.

229.     Defendant Howell's illicit touching of Ms. Doe's breasts, touching of her outer vaginal area, touching of other areas of her body, rubbing his erect penis on her, and placing his hands around her throat would offend a person with a reasonable sense of personal dignity.

230.     Nonconsensual contact of a sexual nature is inherently offensive.

231.     Defendant Butler is vicariously liable for Defendant Howell's battery on Ms. Doe under the doctrine of respondeat superior.

232.     At all relevant times, Howell was employed by Butler as an athletic trainer, primarily and purportedly working with the women's soccer team to remedy and prevent injuries through physical treatments.

233.     Defendant Howell, as an employee and agent of Butler, battered Ms. Doe in the course of providing her physical treatment.

234.     Defendant Howell battered Ms. Doe while he was performing some authorized acts that were within the scope of his employment, related to services he provided as an athletic trainer, and motivated to an extent by Butler's business and interest in the success of the women's soccer team and training and caring for Ms. Doe and other female athletes so that the team would compete for and on behalf of Butler and its athletic program.

235.     As a direct and proximate result of Defendants' battery, Ms. Doe suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

## COUNT IV
### Assault
### (Defendants Butler and Howell)

236.    Plaintiff Jane Doe 1 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

237.    Defendant Howell acted with the intent to cause harmful and/or offensive contact with Ms. Doe when he treated and massaged her, including by touching her outer vaginal area, touching her breasts, touching other areas of her body, rubbing his erect penis on her, and firmly placing his hands around her throat, and caused Ms. Doe to reasonably fear that he would touch and penetrate her vagina, touch her breasts and nipples, and touch her in other lurid ways.

238.    Butler is vicariously liable for Defendant Howell's assaults on Ms. Doe under the doctrine of respondeat superior.

239.    At all relevant times, Howell was employed by Butler as an athletic trainer, primarily and purportedly working with the women's soccer team to remedy and prevent injuries through physical treatments.

240.    Defendant Howell, as an employee and agent of Butler, assaulted Ms. Doe in the course of providing her physical treatment.

241.    Defendant Howell assaulted Ms. Doe while he was performing some authorized acts that were within the scope of his employment, related to services he provided as an athletic trainer, and motivated to an extent by Butler's business and interest in the success of the women's soccer team and training and caring for Ms. Doe and other female athletes so that the team would compete for and on behalf of Butler and its athletic program.

242.     As a direct and proximate result of Defendants' assaults, Ms. Doe suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

**COUNT V**
**Intentional Infliction of Emotional Distress**
**(Defendants Butler and Howell)**

243.     Plaintiff Jane Doe 1 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

244.     Defendant Howell's abuse of his position of authority and power as a Butler athletic trainer and stalking, grooming, manipulating, controlling, photographing, video recording, and sexually abusing Ms. Doe, a vulnerable student-athlete, was atrocious, constitutes extreme and outrageous conduct that exceeds all bounds usually tolerated by a decent society, and is utterly intolerable in a civilized community based upon prevailing cultural norms and values.

245.     Defendant Howell's abuse of his position of authority and power as a Butler athletic trainer and stalking, grooming, manipulating, controlling, photographing, video recording, and sexually abusing Ms. Doe intentionally or recklessly caused her to suffer severe emotional distress.

246.     Butler is vicariously liable for Defendant Howell's intentional infliction of emotional distress under the doctrine of respondeat superior.

247.     Defendant Howell, as an employee and agent of Butler, abused his position of authority and power over Ms. Doe and stalked, groomed, manipulated, controlled, photographed, video recorded, and sexually abused her in the course of providing her physical treatment and

other services as a Butler athletic trainer assigned to treat her and the women's soccer team so that the team would compete for and on behalf of Butler and its athletic program.

248.    Defendant Howell abused his position of authority and power over Ms. Doe and stalked, groomed, manipulated, controlled, photographed, video recorded, and sexually abused her while he was performing some authorized acts that were within the scope of his employment, related to services he provided as an athletic trainer, and motivated to an extent by Butler's business and interest in the success of the women's soccer team and training and caring for Ms. Doe and other female athletes on the team.

249.    As a direct and proximate result of Defendants' intentional infliction of emotional distress, Ms. Doe suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe 1 requests entry of JUDGMENT in her favor and against Defendants: compensating her for her injuries and damages including, but not limited to, compensatory damages, past, present, and future physical and psychological pain, suffering and impairment, medical bills, counseling, and other costs and expenses for past and future medical and psychological care and lost earnings; awarding punitive damages allowable under law; and for such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

Date: July 26, 2023

THE FIERBERG NATIONAL LAW
GROUP, PLLC

/s/ Monica H. Beck
Monica H. Beck*
Rachel Denhollander*
Douglas E. Fierberg*
201 East 17th Street, Suite A
Traverse City, MI 49684
T: (231) 933-0180
F: (231) 252-8100
mbeck@tfnlgroup.com
rdenhollander@tfnlgroup.com
dfierberg@tfnlgroup.com
*pro hac vice motions to be filed

COHEN & MALAD, LLP

/s/ Andrea R. Simmons
Andrea R. Simmons
Greg L. Laker
One Indiana Square, Suite 1400
Indianapolis, IN 46204
T: (317) 636-6481
F: (317) 636-2593
asimmons@cohenandmalad.com
glaker@cohenandmalad.com

*Attorneys for Plaintiff*