UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANE DOE 1, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01302-JRS-MKK |
| | ) | |
| BUTLER UNIVERSITY, | ) | |
| MICHAEL HOWELL individually and as | ) | |
| an agent of Butler University, | ) | |
| RALPH REIFF individually and as an | ) | |
| agent of Butler University, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| BUTLER UNIVERSITY, | ) | |
| MICHAEL HOWELL individually and as | ) | |
| an agent of Butler University, | ) | |
| | ) | |
| Cross Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL HOWELL individually and as | ) | |
| an agent of Butler University, | ) | |
| BUTLER UNIVERSITY, | ) | |
| | ) | |
| Cross Defendants. | ) | |
| | ) | |
| JANE DOE 2 1:23-cv-1303, | ) | |
| JANE DOE 3 1:23-cv-1306, | ) | |
| JANE DOE 4 1:23-cv-1457, | ) | |
| | ) | |
| Consol Plaintiffs. | ) | |

## Order on Motion for Summary Judgment

This is a consolidated set of sex abuse cases.  Four Butler University women's soccer players have filed complaints against their athletic trainer, the program's athletic director, and the University, alleging various tort claims.  (ECF No. 1.) Michael Howell, the alleged abuser, is represented independently.  Presently before the Court is Butler University and Ralph Reiff's Motion for Summary Judgment, (ECF No. 113), and their Motion to Exclude Evidence from the Summary Judgment Record, (ECF No. 147)).  For the reasons set forth below, Defendants' Motion for Summary Judgment is **granted in part** and **denied in part**.  Defendants' Motion to Exclude Evidence is **granted.**

### I.      Excluding Evidence from Summary Judgment Record

"In granting summary judgment, the court may consider any evidence that would be admissible at trial."  *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).  "The evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content." *Id.*  Whether a party is arguing that a fact is undisputed or genuinely disputed, they must support the asserted fact *by citing to the record*, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).

Defendants move to exclude from the Court's consideration various articles and a photograph, all cited to in Plaintiffs' opposition brief but not contained in their attached appendix of exhibits.  Defendants argue that the documents have not been filed as corollary exhibits, so are outside the summary judgment record under Local

Rule 56-1. (Defs.' Mot. to Exclude Evid. ¶ 3, ECF No. 147.) Otherwise, the articles, which include news reports on incidents of abuse by athletic trainers and a directive from the NCAA, constitute hearsay and/or undisclosed expert opinions, so are inadmissible at trial and cannot be considered on summary judgment. (*Id.* ¶¶ 9–12.)

Plaintiffs concede that the disputed photograph included in footnote 6 of their opposition brief, and originally contained in their Motion for Leave to File an Amended Complaint, (ECF No. 95), which the Magistrate Judge denied, is not relevant to the summary judgment decision, (Pls.' Surreply 2, ECF No. 156). Thus, the Court will exclude the photograph from consideration.

As to the articles, Plaintiffs argue that they are not being offered as evidence but solely "in support of legal arguments." (Pls.' Surreply 3.) News articles do not constitute legal argument. A legal argument applies *law* to a set of facts; the documents Plaintiffs cite intend to offer factual nuance to questions of law. The articles are being used to argue the fact that abuse by athletic trainers is a prevalent problem and thus foreseeable, and that it sometimes takes time for sexual assault victims to realize they were being abused. These are factual contentions with which the Defendants disagree. It is immaterial that these contentions may go to an overarching question of law—Plaintiffs cannot introduce improper evidence into the summary judgment record by calling it legal argument.

Defendants are correct that under Local Rule 56-1, "it is [Plaintiffs'] responsibility to submit 'any evidence' [they rely] on in seeking or opposing summary judgment." *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:5-cv-0111-TWP-MJD, 2023 WL

2770179, at *3 (S.D. Ind. Mar. 30, 2023) (citing S.D. Ind. L.R. 56-1(b)).  Regardless of whether and for what purpose the articles may be offered at trial, they have not been formally submitted to the Court.  Because Plaintiffs have not filed the disputed articles as exhibits, the Court at this time will refrain from ruling on their evidentiary admissibility but will exclude them from consideration.

## II.    Legal Standard for Summary Judgment

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When reviewing a motion for summary judgment, the Court reviews the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).  The Court cannot weigh evidence or make credibility determinations on summary judgment—those tasks are left to the factfinder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  Moreover, a court need only consider the materials cited by the parties.  Fed. R. Civ. P. 56(c)(3).  A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## III.    Discussion

Jane Does assert several theories of liability against Butler University and Ralph Reiff.  They claim that Butler and Reiff negligently supervised Howell and are

independently liable under traditional principles of negligence. They also allege that Butler is vicariously liable for Howell's various torts under the doctrine of *respondeat superior*.

The Court agrees with the Parties that Plaintiffs' claims are governed by Indiana law. (*See* Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. 21 n.11, ECF No. 130.) A Court sitting in diversity applies the forum state's choice of law rules to determine which state's substantive law governs. *Auto–Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009). Indiana's choice of law rules prioritize the site of the tort—because the alleged wrongs occurred in the state of Indiana, the Court will apply Indiana law when analyzing Plaintiffs' claims. *See Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987) ("The historical choice-of-law rule for torts . . . was *lex loci delicti commissi,* which applied the substantive law where the tort was committed . . . In a large number of cases, the place of the tort will be significant. . . . In such cases, the traditional rule serves well.").

It is generally well established that "summary judgment is rarely appropriate in negligence cases." *Gracyalny v. Westinghouse Elec. Corp.,* 723 F.2d 1311 (7th Cir. 1983). With this in mind, the Court will proceed through each of Jane Does' theories in turn.

A. Negligent supervision

The Court made clear in its Order denying Defendant's motion to dismiss that negligent supervision is just another name for plain, old negligence. (Order on Mot. to Dismiss 7–8, ECF No. 58.) Indiana courts agree, finding that "negligent retention

and supervision is a species of negligence and has the following elements: 1) a duty of care owed by an employer to a third person; 2) breach of that duty; and 3) injury to the third person proximately caused by the employer's breach." *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009) (citing *Clark v. Aris, Inc.,* 890 N.E.2d 760, 763 (Ind. Ct. App. 2008)).

Here, the key question is whether Butler and Reiff owed a duty of care to the Plaintiffs. "Whether a duty exists is a question of law for the court to decide." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386-7 (Ind. 2016) (citing *Peters v. Forster,* 804 N.E.2d 736, 738 (Ind. 2004)).

Plaintiffs argue that under Indiana's three-part duty test, Butler and Reiff owed a duty of reasonable care to Jane Does. *See Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991). Alternatively, Plaintiffs argue that, by virtue of running a women's soccer program and offering athletic treatment, Butler and Reiff *assumed* a duty of care to protect Jane Does from sexual assault by university athletic trainers, and to install policies and practices to prevent this sort of harm. Finally, Plaintiffs argue that Butler as landowner owed a duty of care to Jane Does as its invitees.

In their supporting brief, Defendants launch several disjointed arguments to the contrary.

They first claim that, if a duty exists, it is a "professional" one and Plaintiffs are obligated to provide expert testimony to establish its existence. (Defs.' Br. in Supp. of Mot. for Summ. J. 11, ECF No. 114.) The Court disagrees. The cases to which Defendants cite, (*id.* at 11–12), involve allegations of malpractice and professional

6

wrongdoing.  Here, Plaintiffs do not allege that Butler and Reiff failed to conform to some industry-wide standard of care applicable to universities or athletic directors. In fact, Defendants point to no case law indicating that such a standard of care even exists.  Rather, Jane Does argue that Defendants were negligent because their actions failed to meet the benchmark of reasonable care.

Defendants go on to argue that Plaintiffs cannot claim Howell acted within the scope of his employment for purposes of vicarious liability, and in the same breath pursue this negligent supervision claim premised on the opposite conclusion.  (*Id.* at 26–28.)  But, "Fed. R. Civ. P. 8(e)(2) allows a party to take inconsistent positions in a single suit . . . [i]nconsistency is acceptable because, at the end of the day, only one of these positions can obtain, and the pleader is limited to a single recovery . . . ."  *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990).

Defendants spend a large chunk of their brief attempting to pigeon-hole Does' claims into oblivion using nonsensical jargon, such as "negligent education" and "negligent provision of sports medicine." (Defs.' Br. in Supp. of Mot. for Summ. J. 12–14, ECF No. 114.)  Defendants also attempt once again to categorize Plaintiffs' claims under the Indiana Medical Malpractice Act and label themselves as healthcare providers.  (*Id.* at 16–18.)  This argument was already rejected by the Court in an earlier Order.  (Order on Mot. to Dismiss 3–5, ECF No. 58.)  Defendants are free to "respectfully disagree" with the Court's rulings, but regurgitating failed arguments will get them nowhere in convincing the Court to grant their motion.  (Defs.' Br. at

16.)  The Court declines to entertain argument that Plaintiffs' negligent supervision claim falls under the medical malpractice statute or is anything other than an ordinary negligence claim.

The Court will proceed to consider whether, as a matter of law, Defendants owed a duty of care to Plaintiffs.  In doing so, the Court will decide if there exist any genuine disputes of material fact that need to be resolved before the duty question can be answered.

   i. <u>Indiana's three-part test</u>

As it stands, "to determine whether a duty exists where the element of duty has not already been declared or otherwise articulated, [Indiana courts] employ a three-part balancing test considering: (1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns."  *Springbrook Vill. Batesville LLC v. Se. Ind. Title Inc.*, 195 N.E.3d 398, 403 (Ind. Ct. App. 2022), *trans. denied sub nom. Springbrook Vill. Batesville LLC v. S.E. Indiana Title Inc.*, 208 N.E.3d 1255 (Ind. 2023) (citing *Penske Truck Leasing Co., L.P. v. Dalton-McGrath,* 157 N.E.3d 5, 13 (Ind. Ct. App. 2020)).

On the first prong, Plaintiffs argue that "given Butler and Reiff required treatment through [Howell], it follows that Butler and Reiff owed a duty to create protocols and policies, and to adequately supervise this individual so as to reasonably ensure that this individual did not sexually abuse Plaintiffs."  (Pls.' Br. in Opp'n to Defs.' Mot for Summ. J. 30, ECF No. 130.)  Plaintiffs also point out that athletes "represent the university in athletic competitions," contributing to the special nature

of their relationship with the Defendants.  (*Id.* at 30.)  With no case law to support it, the Court finds this analysis rather off target.  In assessing the relationship between the Parties, Indiana courts consider the existence of a "contractual," "professional" or "statutory relationship," which ordinarily gives rise to a duty of care.  *Springbrook Vill. Batesville LLC v. Se. Indiana Title Inc.*, 195 N.E.3d 398, 403 (Ind. Ct. App. 2022), trans. denied sub nom. *Springbrook Vill. Batesville LLC v. S.E. Ind. Title Inc.*, 208 N.E.3d 1255 (Ind. 2023).  Jane Does point to nothing in the factual record to evidence the existence of such a relationship between the parties.  Plaintiffs were student athletes at Butler University; their relationship with Defendants ends there.

"For the purpose of determining whether an act is foreseeable in the context of duty, Indiana courts assess 'whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.'" *Doe 1 v. Nat'l Collegiate Athletic Ass'n*, No. 1:23-cv-0542-SEB-MJD, 2024 WL 3293591, at *15 (S.D. Ind. July 2, 2024), *judgment entered*, No. 1:23-cv-0542-SEB-MJD, 2024 WL 4721692 (S.D. Ind. Oct. 4, 2024) (quoting *Goodwin*, 62 N.E.3d at 392). Because any event in the universe has *some* likelihood of occurring, Indiana courts narrow down the inquiry by considering whether the Defendant "knew or had reason to know of any present and specific circumstances that would cause a reasonable person to recognize the probability or likelihood of imminent harm."  *See Id.* (quoting *Cavanaugh's Sports Bar & Eatery, Ltd. v. Porterfield*, 140 N.E.3d 837, 840 (Ind. 2020)).

Plaintiffs argue that when the University and its staff fail to implement policies or protocols to protect athletes from sexual abuse, such abuse is foreseeable. (Pls.' Br. 32, ECF No. 130.) The Court disagrees with this circular logic. Whether the University had a duty to implement such policies necessarily depends on whether there was a serious enough probability of sexual abuse by athletic trainers to require it. "'A Court's task . . . is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct.'" *Goodwin*, 62 N.E.3d at 392 (quoting *Strahin v. Cleavenger,* 603 S.E.2d 197, 207 (W. Va. 2004)). Foreseeability in the context of duty is a more general inquiry. *See Doe 1,* 2024 WL 3293591, at *15. It asks not whether Jane Does' harms were a reasonably foreseeable result of Butler and Reiff's alleged negligence, but instead assesses the likelihood that a policy delegating responsibility for a university's athletic treatment program to its athletic trainer would lead to sexual abuse of student athletes. *Id.*

Nothing in the record suggests that universities and their athletic directors "routinely contemplate" that their athletic trainers will sexually assault students. *Goodwin*, 62 N.E.3d at 394. Nor do Plaintiffs present evidence to indicate that Butler or Reiff had some specific knowledge about Howell or the athletic program at Butler that would put a reasonable person on notice of imminent harm. The Court is not convinced that, among the thousands of universities operating athletic treatment programs in the United States, the likelihood of sexual abuse by an athletic trainer is so high as to raise a legal duty on the part of an institution and its athletic directors

to institute preventative measures.  The Court holds that the harm to Jane Does was not legally foreseeable.

Finally, Plaintiffs argue that because Indiana law "prohibits athletic trainers" from engaging in sexual abuse of trainees, it serves public policy to require universities and their athletic directors to prevent such behavior.  (Pl.'s Br. 31, ECF No 130) (citing to Ind. Code § 25-1-9-4).  The Court disagrees.  Plaintiffs cite to a section of the Indiana code that discusses grounds for disciplinary sanctions against health profession practitioners by relevant state boards.  Ind. Code § 25-1-9-4(a). There is no reason a university has a duty to institute policies prohibiting behavior by athletic trainers that may be grounds for disciplinary sanctions by the Indiana Athletic Trainers Board.  *See* Ind. Code § 25-0.5-11-18.  Recognizing such a duty would quickly succumb to the slippery slope effect.

Alternatively, Plaintiffs appeal to the Court on a "more basic level, based on social norms."  (Pl.'s Br. 31, ECF No. 130.)  In other words, that student-athletes expect the trainer giving them athletic treatment to be vetted by the university, and steps to have been taken to ensure the treatment is administered appropriately.  This is no doubt a fair point.  But, based on "social norms," a university expects the trainers it vets and hires to behave professionally, not criminally, and it certainly does not expect them to sexually abuse student athletes.  Sexual abuse is behavior that falls *outside* the bounds of social norms.  And this is precisely why universities and athletic directors should not be required to operate their sports programs under the assumption that the athletic trainers they hire may turn out to be sexual assailants.

11

Universities are free to install policies and practices addressing the risk of sexual abuse by athletic trainers, but the Court declines to recognize a common-law duty to do so.

### ii.  Assumed duty of care

Even when a duty at common-law does not exist, one may be imposed on an individual who "by affirmative conduct, assumes to act, even gratuitously, for another." *Hous. Auth. of City of S. Bend v. Grady*, 815 N.E.2d 151 (Ind. Ct. App. 2004) (citing *Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.,* 741 N.E.2d 383, 388 (Ind. Ct. App.2000)).  "The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a reasonably prudent manner." *Id.* (quoting *Merchants*, 741 N.E.2d. at 388).  Jane Does argue that Defendants assumed a duty of care through "affirmative, deliberate conduct," namely the operation of a women's soccer team with accompanying athletic treatment provided by the University's trainers.  *Neal v. IAB Fin. Bank*, 68 N.E.3d 1114, 1119 (Ind. Ct. App. 2017).  Plaintiffs are correct that "the existence and extent of such duty are ordinarily questions for the trier of fact," (Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J. 24, ECF No. 130), but fail to mention that "when there is no genuine issue of material fact, assumption of a duty may be determined as a matter of law," *Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682, 692 (Ind. Ct. App. 2006).  Here, Jane Does fail to raise a genuine dispute of material fact as to whether Defendants acted in a manner sufficient to assume a duty of care.

As to Defendant Butler, the Court declines to conclude that running an athletic program that offers athletic treatment to its players amounts to the affirmative assumption of a duty to protect these players from sexual abuse.  Plaintiffs have not identified any on-point case law in support of their contention, nor any deliberate actions taken by Butler to indicate that the university assumed a duty to protect Jane Does from sexual abuse.  The factual record is similarly devoid of any evidence of affirmative acts that indicate Reiff assumed a duty to protect Jane Does from sexual abuse by Howell.  On the contrary, Reiff seemed to give Howell wide breadth in operating the athletic program and did not intervene in any of Howell's questionable treatment methods.  Because there is no genuine issue of material fact in this regard, the Court cannot conclude that Reiff assumed a duty of reasonable care to protect Does from sexual abuse through the act of overseeing Butler University's athletic program.  Rather, the Court finds that on this record neither Butler nor Reiff assumed a duty of care through the mere operation of a women's soccer team with accompanying athletic treatment provided by the University's trainers.

    iii.   <u>Premises liability</u>

"A landowner owes to an invitee or social guest 'a duty to exercise reasonable care for his protection while he is on the landowner's premises.'"  *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011) (quoting *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind.1991)).  More specifically, landowners must "take reasonable precautions to protect invitees from foreseeable criminal attacks."  *Rogers v. Martin*, 63 N.E.3d 316,

326 (Ind. 2016). Jane Does were invitees on Butler University's land. *See Yost v. Wabash Coll.*, 3 N.E.3d 509, 525 (Ind. 2014).

The foreseeability analysis here is the same as that previously discussed in the Indiana three-part duty test sub-section. It involves a general inquiry considering "the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence," in contrast to the more specific foreseeability analysis required in the proximate cause context. *Goodwin*, 62 N.E.3d at 393. Because the analysis is identical, the Court directs the parties to refer to its earlier discussion of foreseeability. *See supra,* Section III.A.i. Ultimately, Defendants are correct; nothing in the summary judgment record indicates that a university "routinely contemplates" a scenario in which "an athletic trainer might suddenly assault or batter a student athlete." *Goodwin*, 62 N.E.3d at 394; (Defs.' Br. 33, ECF No. 114.)

Considering the foregoing analysis, the Court finds that, as a matter of law, Butler University and Reiff did not owe a duty of care to Jane Does to take measures to protect them from Howell's alleged sexual abuse. Consequently, the Court declines to engage in further analysis on the contours of this nonexistent duty. Plaintiffs' negligent supervision claims do not survive.

## B. Vicarious liability

Vicarious liability will be imposed upon an employer under the doctrine of *respondeat superior* "where the employee has inflicted harm while acting 'within the scope of employment.'" *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 107 (Ind. Ct. App. 2014), *on reh'g*, 25 N.E.3d 748 (Ind. Ct. App. 2015) (quoting *Barnett v. Clark,* 889

N.E.2d 281, 283 (Ind. 2008)).  For conduct to fall within the scope of employment, it "must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Barnett*, 889 N.E.2d at 283.  In other words, "'[a]n employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control.'" *Walgreen Co.*, 21 N.E.3d at 107 (quoting Restatement (Third) of Agency, § 7.07(2) (2006)).  Alternatively, "an employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Id.*

"It is well established that whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder." *Walgreens Co.*, 21 N.E.3d at 107 (citing to *Trinity Lutheran Church, Inc. v. Miller,* 451 N.E.2d 1099, 1102 (Ind. Ct. App. 1983)). That is unless "*none* of the employee's acts were authorized;" then the question is a matter of law "that need not be submitted to the trier of fact." *Id.* (citing to *City of Fort Wayne v. Moore,* 706 N.E.2d 604, 607 (Ind. Ct. App.1999)).

i.    Assault and battery

Plaintiffs claim that Butler University is vicariously liable for Howell's assault and battery of Jane Does.  (Compl. ¶¶ 231, 238, ECF No. 1.)  In response, Defendants argue that "there is no rationale or evidence from which a jury could conclude that Howell's alleged offensive touching of sexual anatomy arose naturally and predictably from his performance of therapeutic massage as a licensed athletic trainer."  (Defs.'

Br. in Supp. of Mot. for Summ. J. 34, ECF No. 114) (invoking language used to describe what falls into the scope of employment by the court in *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 464 (Ind. 2018)).

In support of their argument, Defendants cite to *New Augusta N. Pub. Acad. & Metro. Sch. Dist. of Pike Twp.*, a case in which a heavily disabled child was sexually abused by their caretaker at school, to argue that without a "contention or evidence that Butler employed Howell for any purpose involving care for anyone's sexual anatomy," Plaintiffs' *respondeat superior* claim must fail.  (Defs.' Br. in Supp of Mot. for Summ. J. 35, ECF No. 114) (citing 219 N.E.3d 175 (Ind. Ct. App. 2023)). Defendants' logic is flawed.  In *New Augusta,* the Indiana Court of Appeals held that summary judgment was not appropriate because a jury could conclude that the caretaker, who was responsible for cleaning the victim's intimate areas, was acting within the scope of her employment when she committed the assault.  The court *did not* conclude that sexual assault could be considered activity within the scope of employment *only* in cases where a defendant was employed for purposes of caring for a victim's intimate areas.  To the contrary, the state court signaled its agreement with *Cox v. Evansville Police Dep't,* in which the Indiana Supreme Court held that summary judgment was inappropriate in two distinct cases where police officers committed sexual assaults while in the process of responding to legitimate law enforcement situations.  *See New Augusta*, 219 N.E.3d at 184 ("We find *Cox* and *Stropes* persuasive here.")

Defendants alternatively cite to *Jatinder K. Kansal, M.D., P.C. v. Krieter* to argue that because Plaintiffs do not raise "medical negligence" claims, they essentially admit that Howell's sexual abuse could not have been committed within the scope of his employment. (Defs.' Br. 35-26, ECF No. 114) (citing to 213 N.E.3d 573, 577 (Ind. Ct. App. 2023)). For starters, this opinion considers whether a tort action in the medical context can proceed outside the Medical Malpractice Act's statutory scheme and does not discuss what behavior falls within the scope of employment for purposes of *respondeat superior*. But even if *Krieter* was applicable to the analysis at issue here, the opinion has since been vacated and remanded to the trial court by the Indiana Supreme Court in light of that court's recent decision in *Indiana Dep't of Ins. v. Doe*, 247 N.E.3d 1204 (Ind. 2024).

Plaintiffs allege that Howell sexually abused them under the guise of administering athletic treatment. Notably, scope of employment "may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; [or] that the employee commits for self-gratification or self-benefit." *Cox*, 107 N.E.3d at 461. The Court finds that a jury could reasonably conclude Howell was acting within the scope of employment when he sexually assaulted Jane Does. Such a finding would be in line with existing case law. *See Southport Little League v. Vaughan*, 734 N.E.2d 261 (Ind. Ct. App. 2000) (denying summary judgment to little league team on *respondeat superior* claim when volunteer molested players while fitting their uniforms); *Walgreens Co.*, 21 N.E.3d at 107 (denying summary judgment to pharmacy on *respondeat superior* claim where pharmacist wrongly looked up a

patient's information using pharmacy computer while at work).  Alternatively, a jury could find that Howell's sexual abuse was part of an "independent course of conduct not intended by the employee to serve any purpose of the employer."  *Walgreen Co.*, 21 N.E.3d at 107.  In fact, the state court in *Cox* noted that its conclusion stemmed from "the unique authority that cities vest in police officers . . . [and] [e]mployees without this authority and power who commit sexual assaults may be acting outside the scope of their employment as a matter of law."  *Cox*, 107 N.E.3d at 463.

Regardless, the Court does not believe that Howell's alleged "sexual assault was so disconnected from his employment activities that a jury could not find that the assault arose naturally or predictably from the employment context."  *Cox*, 107 N.E.3d at 463.  Howell was authorized to schedule and perform athletic massage for the players, and to do so in private and without supervision.  At least some of his conduct leading up to and at the time of the alleged assaults was sanctioned by Butler University.  *See Walgreens Co.*, 21 N.E.3d at 107.  Thus, the question of vicarious liability as to the allegations of assault and battery will proceed for resolution by the jury or through settlement.

ii.    <u>Intentional infliction of emotional distress</u>

To succeed on an intentional infliction of emotional distress claim, a plaintiff must show that the defendant "(1) engage[d] in extreme and outrageous conduct that (2) intentionally or recklessly (3) cause[d] (4) severe emotional distress to another."  *Branham v. Celadon Trucking Servs., Inc.,* 744 N.E.2d 514, 523 (Ind. Ct. App. 2001) (citing *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. Ct. App. 1999)).  "What constitutes

18

extreme and outrageous conduct depends, in part, upon prevailing cultural norms and values." *Branham*, 744 N.E.2d at 523. "If reasonable persons can differ regarding the extremity and outrageousness of certain conduct, then the matter should be left to a jury's determination." *State v. Alvarez by next friend Alvarez*, 150 N.E.3d 206, 218–19 (Ind. Ct. App. 2020).

Jane Does allege that Butler University is vicariously liable for Howell's alleged infliction of emotional distress ("IIED"). Plaintiffs' IIED claim stems from Howell "stalking, grooming, manipulating, controlling, photographing, video recording, and sexually abusing" Jane Does. (Compl. ¶ 144). Defendants argue that the underlying IIED claim is inadequate, so the attached vicarious liability claim for IIED must fail. As concerns the allegations of assault and battery, the Court has already opined that the issue of vicarious liability will proceed to the jury. The "no-touch harassment" claims are contained solely in Plaintiffs' IIED allegations, and Defendants argue that "no touching sexual harassment (such as verbal harassment or ogling) is insufficient to meet the elements of a claim under Indiana law for intentional infliction of emotional distress." (Defs.' Br. in Supp. of Mot. for Summ. J. 2, ECF No. 114.) So, Defendants argue, there exists no "civil cause of action under Indiana law against Butler or Mr. Reiff for negligence with respect to such alleged sexual harassment by Howell." (*Id.*) To be clear, according to their Complaint, Plaintiffs are pursuing *respondeat superior* claims only against Butler University, not Mr. Reiff. (Compl. ¶¶ 231, 238, 246, ECF No.1.) But Defendants are generally correct; if Plaintiffs do not raise a viable IIED claim, their corollary vicarious liability claim cannot proceed. *See*

*Ali v. All. Home Health Care, LLC*, 53 N.E.3d 420 (Ind. Ct. App. 2016) ("By definition, respondeat superior requires that there be an underlying tort in the first place . . . .").

"In the appropriate case, the question [of what constitutes extreme and outrageous conduct] can be decided as a matter of law." *Branham*, 744 N.E.2d at 523. Indiana courts have held that, in a dispute between members of a Homeowners Association, installing security cameras outside one's house to monitor for vandalism by a neighbor and filing police reports for suspected vandalism did not constitute outrageous conduct as a matter of law. *See Curry v. Whitaker*, 943 N.E.2d 354, 361–2 (Ind. Ct. App. 2011). Similarly, a private detective, hired by an employer to investigate the legitimacy of its employee's disability claim, who filmed the employee participating in a church service did not engage in outrageous conduct; the same goes for a contractor's wife who called her husband's client seven times in one hour to yell at her over a dispute about the construction project. *See Creel v. I.C.E. & Assocs., Inc.*, 771 N.E.2d 1276, 1283 (Ind. Ct. App. 2002). Conversely, Indiana courts have sent the question to the jury in a case where state agencies became aware of high levels of lead in the blood of school children in a particular neighborhood but failed to inform the families or take any steps to address the issue. *See Alvarez*, 150 N.E.3d at 219.

In this case, the Court finds that Plaintiffs have raised a genuine issue of material fact as to whether Howell's alleged conduct was "outrageous" as to raise an IIED claim. A jury could reasonably conclude that moving and removing players' clothing during athletic massage to allegedly take photographs of and look at their genitalia

and breasts for self-gratification can rise to the level of conduct that goes "beyond all possible bounds of decency." *Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996) (quoting Restatement (Second) of Torts § 46 (1965)). Thus, the question of Butler's vicarious liability on the IIED claim remains for resolution by the trier of fact or through settlement.

C. Statute of limitations

"Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996) (citing *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind. 1992)). It is for the Court to determine when a cause of action accrues. *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 564 (Ind. 1992). The statute of limitations period for negligence and tort claims in Indiana runs for two years from time of accrual. *Wehling*, 586 N.E.2d at 843; *Stickdorn v. Zook*, 957 N.E.2d 1014, 1021 (Ind. Ct. App. 2011).

The issue here is at what point Jane Does realized Howell was sexually abusing them. Defendants argue that the clock started running when each alleged act of abuse or negligence was committed—so any claim arising more than two years before this action was filed is time barred. (*See* Defs.' Br. 37, ECF No. 114.) Plaintiffs reply that, because Howell incorporated abuse into athletic treatment, Jane Does did not become aware of the fact that they were being assaulted until "they spoke with each

other, realized what had happened to them, and exposed Howell's abuse." (Pls.' Br. 52, ECF No. 130.) The Court finds this to be a stretch.

Jane Does were at the age of majority when they experienced Howell's alleged abuse, they were not minors so no exceptions to the statute of limitations rules apply. *See Fager v. Hundt*, 610 N.E.2d 246, 250 (Ind. 1993) ("The statute of limitations disability provision requires that, as to each cause of action accruing during the disability of minority, a plaintiff must bring the action within two years after reaching majority."). The Indiana accrual standard is an objective one and asks whether a reasonable person under the circumstances would have realized they were being harmed. *Martin Oil Mktg. Ltd. v. Katzioris*, 908 N.E.2d 1183, 1188 (Ind. Ct. App. 2009). Plaintiffs point out that Howell gave numerous excuses for administering improper treatment, (Pls.' Br. 51–52, ECF No. 130); but even if the power dynamic was such that Jane Does felt compelled to continue receiving treatment from Howell, it is doubtful that Howell's excuses convinced them that no harm was done. Doe 1 alleges she was fearful of Howell and once cried when he walked into the room. (Doe 1 Compl. ¶ 167, ECF No. 1.) Doe 2 alleges that Howell's treatments made her "feel nervous, uncomfortable, and afraid." (Doe 2 Compl. ¶ 54, ECF No. 1, case no. 1:23-cv-01303-JRS-MKK.) And Doe 4 alleges that after a particularly long and uncomfortable treatment session, "she suffered an anxiety attack, called her boyfriend in a panic, wanted to quit soccer, and hid in the bathroom." (Doe 4 Compl. ¶ 89, ECF No. 1, case no. 1:23-cv-01457-JRS-MKK.) It is obvious that Plaintiffs were uncomfortable with and fearful of Howell's "treatments," making it unlikely they

believed Howell's behavior was entirely normal. While Howell may have sought to convince Jane Does that his abuse was part of legitimate athletic massage, the Court finds that as a matter of law, a reasonable person would recognize they had been harmed after each act of alleged abuse.

As a result, any claims arising before July 26, 2021 (for Does 1 and 2) and before August 17, 2021 (for Doe 4) are time barred and are thereby **dismissed**.

## IV.    Conclusion

Defendants' Motion to Exclude Evidence from the Summary Judgment Record, (ECF No. 147), is **granted.** Defendants' Motion for Summary Judgment, (ECF No. 113), is **granted** as to the negligence claims against Butler and Reiff and **denied** as to the vicarious liability claims against Butler.

All claims arising before the two-year statute of limitations period are **dismissed**.

The proceedings against Howell have been stayed because he filed for Chapter 13 bankruptcy. (*See* ECF No. 176.) The vicarious liability claims against Butler University will proceed for resolution by a jury whenever Howell's bankruptcy proceedings conclude, the claims against him are reinstated, and his liability can be adjudicated; or by settlement whenever Butler and the Jane Does deem appropriate, irrespective of Howell's bankruptcy proceedings.

Because the Court has found that Defendant Reiff owed no duty of care to protect Jane Does from Howell's alleged sexual abuse, the case is **dismissed** as to Reiff. The Clerk **shall** terminate Reiff as a defendant in this action and update the caption accordingly.

**SO ORDERED.**

Date: 3/31/2025

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Monica Beck
The Fierberg National Law Group, PLLC
mbeck@tfnlgroup.com

Bailor Bell
The Fierberg National Law Group
bbell@tfnlgroup.com

Amanda C. Couture
Paganelli Law Group
amanda@paganelligroup.com

Anne L. Cowgur
Paganelli Law Group
acowgur@paganelligroup.com

Rachael J. Denhollander
The Fierberg National Law Group, PLLC
rdenhollander@tfnlgroup.com

Douglas E Fierberg
The Fierberg National Law Group, PLLC
dfierberg@tfnlgroup.com

Jacob Ryan Goodman
The Fierberg National Law Group, PLLC
jgoodman@tfnlgroup.com

William P. Kealey
Stuart & Branigin LLP
wpk@stuartlaw.com

Gregory L. Laker
COHEN & MALAD LLP
glaker@cohenandmalad.com

Fred Anthony Paganelli
PAGANELLI LAW GROUP
tony@tonypaganelli.com

Andrea Rose Simmons
Cohen & Malad LLP
asimmons@cohenandmalad.com